UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

JOSEPH EMIL KLUG,

      Plaintiff,

v.                                      Case No.  5:15cv237/MP/CJK

N.C. ENGLISH, et al.,

      Defendants.
_____/

ORDER and
REPORT AND RECOMMENDATION

This prisoner case filed under 28 U.S.C. § 1331 and *Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971), is before the court upon defendants English, Lowe, Robinson, Thompson, Pryor and Cartagena's (collectively "defendants") Consolidated Motion to Dismiss or, in the Alternative, for Summary Judgment (doc. 37), accompanied by evidentiary materials (doc. 38).   Plaintiff filed a response in opposition with evidentiary materials (doc. 50).  Defendants replied (doc. 53).  Plaintiff has moved for leave to file a surreply (doc. 54), accompanied by his proposed surreply brief (doc. 55). Plaintiff has also filed a barebones request for summary judgment (doc. 56).  These matters are referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C).  After

careful consideration, the undersigned concludes that defendants' motion to dismiss should be granted, that all of plaintiff's claims should be dismissed with prejudice, and that plaintiff's motion for summary judgment should be denied.

BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is an inmate of the Federal Bureau of Prisons ("BOP") currently confined at the Federal Correctional Institution in Marianna, Florida ("FCI-Marianna"). Plaintiff's complaint names seven defendants, all present or former BOP employees at FCI-Marianna: Warden N.C. English, Associate Warden of Programs A. Lowe, Captain Mariano Perez Cartagena, Associate Warden of Operations N. Robinson, Supervisor of Education (SOE) R. Thompson, Captain S. Pryor, and "Any and all unknown and unnamed mailroom staff that processes mail and rejects role-playing books in accordance to this ban." (Doc. 1). Plaintiff is challenging the constitutionality of Warden English's rejection of role-playing books he ordered from a vendor, and the defendants' subsequent ban on inmates' possession of fantasy/role-playing games and related materials (cards, dice, books, supplemental publications) at FCI-Marianna. Plaintiff asserts three First Amendment claims arising from the book rejection and ban: (1) the rejection and ban are retaliatory, (2) plaintiff was denied access to the rejected books during his 20-day appeal period, thereby depriving him of the ability to "properly mount

defense against rejection", and (3) the blanket ban on inmates' possession of role-playing games and related publications without individual review of each publication violates inmates' free speech rights.  Plaintiff also asserts two Fourteenth Amendment claims:  (1) the ban on inmates' possession of role-playing books and materials violates the Equal Protection Clause; and (2) the ban deprives inmates of procedural due process because publications are not individually reviewed prior to being declared contraband.  (Doc. 1, pp. 13-14).  As relief, plaintiff seeks the following:

> Compensatory damages $952.49 (includes $811 to replace the books plaintiff was forced to mail-out without review, $25.85 in postage to mail out the books, and $115.64 in copy costs, postage envelopes, printing costs as of August 29, 2015).

> Punitive and nominal damages to be determined by a jury.

> An injunction to have the Central Office of the Federal Bureau of Prisons to update policy §5266.07 Incoming Publications to clarify that the warden is not allowed to ban books solely based on genre or subject. Each book is to be reviewed individually and if deemed necessary to reject it, each book must be rejected individually.

(Doc. 1, pp. 13, 15).

Defendants move to dismiss each of plaintiff's claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure, for one or more of the following reasons:  (1) failure to exhaust administrative remedies, (2) failure to state a claim upon which relief can be granted, (3) lack of injury (construed as a challenge to plaintiff's

standing), (4) defendants' entitlement to qualified immunity. (Doc. 37). Defendants move in the alternative for summary judgment on the merits of one or more claims. Because the undersigned concludes that all of plaintiff's claims should be dismissed, this Report does not address defendants' alternative motion for summary judgment.

## RELEVANT LEGAL STANDARDS

Rule 12(b)(6) Standard

In considering a motion to dismiss filed under Rule 12(b)(6), the court accepts all well-pleaded factual allegations of the complaint as true and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff. *Hunnings v. Texaco*, Inc., 29 F.3d 1480, 1483 (11th Cir. 1994). A complaint, or any claim therein, will be dismissed if it fails to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)); *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (holding that courts must follow the Supreme Court's "'two-pronged approach' of first separating out the complaint's conclusory legal allegations and then determining whether the remaining well-pleaded factual allegations, accepted as true, 'plausibly give rise to an entitlement to relief.'" (*quoting Iqbal*, 556 U.S. at

679)).  The court is not required to accept as true any conclusory allegation "upon information and belief" that is unaccompanied by enough facts to make that statement plausible.  *Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013) (*citing Twombly*, 550 U.S. at 557).  Similarly, a plaintiff cannot rely on allegations that "upon information and belief" other individuals' rights were violated, to establish his own constitutional injury.  *See e.g., Chandler v. Sec'y of Fla. Dep't of Transp.*, 695 F.3d 1194, 1201 and n.5 (11th Cir. 2012) ("The allegation that 'upon information and belief' some other drivers, not the Chandlers, may have been threatened with arrest or asked to provide 'driver's license' information, is insufficient to state a claim that is plausible on its face as to the Chandlers, which is what they must do to escape dismissal.  The Chandlers cannot rely on an allegation that others' rights were violated to establish their own constitutional injury." (*citing Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc*., 454 U.S. 464, 474, 102 S. Ct. 752, 70 L. Ed. 2d 700 (1982), in turn *citing Twombly*, 550 U.S. at 570)); *see also, e.g., Smith v. City of Sumiton*, 578 F. App'x 933, 935 n.4 (11th Cir. 2014) ("[F]or purposes of a Rule 12(b)(6) motion to dismiss, we do not have to take as true allegations based merely 'upon information and belief.'" (*citing Mann v. Palmer, supra*)).

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 555). As the Supreme Court reiterated in *Iqbal, supra*, although Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A complaint must state a plausible claim for relief, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The mere possibility that the defendant acted unlawfully is insufficient to survive dismissal. *Id*. The complaint must include "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, that is, "across the line from conceivable to plausible." *Id.*, 550 U.S. at 570.

A complaint is also subject to dismissal for failure to state a claim if the allegations – on their face – show that an affirmative defense bars recovery on the claim. *Marsh v. Butler Cnty., Ala.,* 268 F.3d 1014, 1022 (11th Cir. 2001); *see also Jones v. Bock*, 549 U.S. 199, 215, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007) (reiterating that principle).

Qualified Immunity

Qualified immunity shields government officials from individual capacity suits against them for acts that do not violate a clearly established statutory or constitutional right of which a reasonable person would have known given the circumstances and information possessed by the official at the time of his or her conduct. *Hope v. Pelzer*, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002). Qualified immunity seeks to ensure that individuals can reasonably anticipate when their conduct may give rise to liability; thus, liability attaches only if the contours of the right allegedly violated are sufficiently clear that a reasonable person would understand that what he is doing violates that right. *McElligott v. Foley*, 182 F.3d 1248, 1260 (11th Cir. 1999) (*citing United States v. Lanier*, 520 U.S. 259, 270, 117 S. Ct. 1219, 137 L. Ed .2d 432 (1997)).

To receive qualified immunity, the public official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks omitted). "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Id*. at 1194.

The Supreme Court has established a two-pronged test for evaluating a claim of qualified immunity:  (1) whether a constitutional right has been violated on the facts alleged; and (2) whether the right was "clearly established."  *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001).  The court has the discretion to decide which of the two prongs to address first, in light of the circumstances in the particular case at hand.  *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009).  The court may grant qualified immunity if the plaintiff fails to carry his burden on either of the two prongs.  *See, e.g., Pearson*, 555 U.S. at 243-245 (evaluating only *Saucier*'s second prong and holding that law enforcement officers were entitled to qualified immunity because the unlawfulness of their conduct was not clearly established).

Exhaustion Requirement

Title 42 U.S.C. § 1997e  provides, in relevant part:  "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a  prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  This exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, whether they allege excessive force or some other wrong, and whether they seek only monetary

damages.  *Porter v. Nussle*, 534 U.S. 516, 524, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002).  The exhaustion requirement applies to *Bivens* actions.  *Alexander v. Hawk*, 159 F.3d 1321, 1328 (11th Cir. 1998) (holding that prisoner asserting *Bivens* claim must exhaust available administrative remedies); *Zolicoffer v. Scott*, 55 F. Supp. 2d 1372, 1375 (N.D. Ga. 1999), *aff'd*, 252 F.3d 440 (11th Cir. 2001) (Table).

Exhaustion of all available administrative remedies is a mandatory precondition to suit.  *Booth v. Churner*, 532 U.S. 731, 739, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001) ("The 'available' 'remed[y]' must be 'exhausted' <u>before</u> a complaint under § 1983 may be entertained.") (emphasis added); *see also Porter*,  534 U.S. at 524-25 ("Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.").  "[T]he PLRA exhaustion requirement requires <u>proper</u> exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006) (emphasis added).   "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules [as a precondition to filing suit in federal court] because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  548 U.S. at 90-91.

The grievance procedure promulgated by the BOP requires an inmate to: (1) file an informal grievance with institutional staff by submitting a BP-8 Attempt at Informal Resolution; (2) file a formal written complaint with the institution by submitting a BP-9 Request for Administrative Remedy; (3) file an appeal to the Regional Director by submitting a BP-10 Regional Administrative Remedy Appeal; and (4) file an appeal to the General Counsel for the BOP by submitting a BP-11 Central Office Administrative Remedy Appeal.  28 C.F.R. § 542.10 - 542.15.  Each of these steps is generally required to satisfy the exhaustion requirement.  *Id*.; *see also* Doc. 38, Ex. 3, Jusino Decl. ¶ 2.

<u>Procedure for Ruling on Motion to Dismiss for Failure to Exhaust Administrative Remedies</u>

A failure to exhaust administrative remedies is an affirmative defense that the defendant bears the burden of proving.  *See Jones*, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints.").  In *Bryant v. Rich*, 530 F.3d 1368 (11th Cir. 2008), the Eleventh Circuit outlined the procedure district courts should follow when presented with a motion to dismiss for failure to exhaust administrative remedies under the Prison Litigation Reform Act (PLRA).  The court held that the defense of failure to exhaust should be treated as a matter in abatement.  *Id*. at 1374.  "This means that procedurally the defense is

treated 'like a defense for lack of jurisdiction,' although it is not a jurisdictional matter." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (*quoting Bryant*, 530 F.3d at 1374).  Because exhaustion is a matter in abatement, "it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." *Bryant*, 530 F.3d at 1374-75 (citation and internal quotation omitted).

Deciding a motion to dismiss for failure to exhaust administrative remedies involves two steps. *Turner*, 541 F.3d at 1082.  First, the court looks to the factual allegations in the defendant's motion, and those in the plaintiff's response. *Id*.  If they conflict, the court accepts the plaintiff's version as true.  "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id*.; *see also Bryant*, 530 F.3d at 1373-74.

If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, "the court proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Turner*, 541 F.3d at 1082 (*citing Bryant*, 530 F.3d at 1373-74, 1376).  "The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Id*.  Upon making findings on the disputed issues of fact, the court then

decides whether, under those findings, the plaintiff has exhausted his available administrative remedies.

## FACTS

The facts of this Report are confined to the allegations of plaintiff's complaint and attached exhibits (doc. 1), and the parties' evidentiary materials relating to exhaustion.   Plaintiff alleges that in 2013, another inmate (Inmate Springer), submitted a written inmate request that Noble Knight Games ("Noble Knight") be approved as a BOP vendor, and that inmates be allowed to possess and order "Magic the Gathering" card games and other materials for that and other role-playing games. (Doc. 1, p. 7 ¶ 2; *see also* Doc. 1, Attach. at p. 18).   Warden English responded to Inmate Springer's request, in relevant part:

> [T]here are no reasons, after consulting with the SOMP [Sex Offender Management Program] Coordinator that these materials or games should be denied in a general manner.  However, individuals on a case-by-case basis may be restricted from these materials as deemed clinically necessary by the SOMP Coordinator with my approval.
>
> In terms of ordering such items, you will have to follow the established procedures of making Special Purchase Orders as these items are obviously not on the approved Commissary list.

(Doc. 1, p. 7 ¶ 2 and Attach. at p. 18).[1]   On December 10, 2013, defendant Thompson

issued a memorandum, approved by defendants Robinson and English, stating:

> Special Purchase Orders (SPO's) are permitted for Recreation
> purposes subject to approval by Recreation staff and the Captain.
> However, Bureau of Prisons (BOP) policy does not authorize
> SPO's for the purchase of games.  BOP policy states that games
> are provided by the Recreation Department.
>
> Some inmates have been approved at other facilities to purchase
> games in the form of books or playing cards.  A limited number
> of books and playing cards are permitted by policy, accordingly,
> these inmates have been permitted to retain these items upon
> transfer to FCI Marianna, on a case by case basis.  However,
> additional books, cards, or other gaming items will not be
> permitted via SPO.
>
> Additional questions about this policy may be directed to the
> Supervisor of Education.

(Doc. 1, Attach. at p. 16).

On January 6, 2014, plaintiff placed an email order with Noble Knight for five

books.  (Doc. 1, p. 8 ¶ 6).  Plaintiff's complaint does not identify the books by name,

---

[1] The court does not accept as fact plaintiff's subsequent allegations "upon information and belief" that after Warden English issued her October 3, 2013 response to Inmate Springer's request, "a number of inmates attempted to order the role-playing dice by submitting an SPO form using Noble Knight as the vendor" and that "[i]nmates who attempted to place the order were told they 'would not be able to order this while I'm here.  We'll find a way to stop this.'" (Doc. 1, pp. 7-8 ¶ 3).  The court also does not accept as fact plaintiff's allegation "upon information and belief" that in early December 2013, Inmate Springer filed an Administrative Remedy seeking to order the dice as was approved by the warden in the Oct. 3, 2013 cop-out."  (Doc. 1, p. 8 ¶ 4).  These allegations are based "upon information and belief" without sufficient facts or personal knowledge to make them plausible.  Additionally, plaintiff cannot rely on allegations that "upon information and belief" other individuals' rights were violated, to establish his own constitutional injury.

but the allegations and attachments to his complaint indicate that the books related to the fantasy role-playing game Dungeons & Dragons.  Plaintiff then submitted a request with his institution, using the BP-199 form, to have funds withdrawn from his inmate account to pay for the books.  (*Id*.).  Noble Knight shipped plaintiff's book order on January 24, 2014, and plaintiff's books arrived at FCI Marianna on January 31, 2014.  (*Id*.).

On February 6, 2014, after not receiving the books, plaintiff inquired with mailroom officer Ms. Smith who, according to plaintiff, informed plaintiff that defendants Thompson and English were not allowing any more role-playing books to come onto the compound.  (Doc. 1, p. 8 ¶ 7).  Plaintiff spoke with defendant Thompson who, according to plaintiff, informed plaintiff that a ban on all role-playing books was put into place because they are detrimental, and that the ban was the result of a new national or regional policy.  (Doc. 1, p. 9 ¶ 8).  On February 7, 2014, plaintiff spoke with defendant English who, according to plaintiff, stated that defendant Captain Cartagena no longer wanted any role-playing books allowed and that Policy Statement P5266.07 Incoming Publications authorized institutional staff to deny all role-playing books.  (Doc. 1, p. 9 ¶ 9).

On February 21, 2014, prior to receiving formal written notice that the books he ordered were rejected, plaintiff submitted a BP-8 to institutional staff complaining

that the mailroom was improperly rejecting all books and materials deemed to be role-playing.  (Doc. 1, p. 9 ¶ 10 and Attach. at pp. 27-29).  Plaintiff argued that BOP Policy Statement 5266.07 required that books and publications be reviewed and rejected individually, that the role-playing books did not fall under the Policy Statement's general restrictions on certain types of publications, and that defendant Thompson's December 10, 2013 memorandum did not apply to book orders using the BP-199 process.  (*Id.*).  On March 14, 2014, plaintiff received the following response:

> Each publication received in the mailroom is reviewed independently.  If it is found to be a security issue, it will be rejected as such.  Even though a publication is ordered thru a BOP approved vender [sic], it still has to be reviewed for content upon arrival.  If a publication is rejected, it is held 20 days from the time the rejection notification is distributed for appeal purposes.

(Doc. 1, Attach. at p. 27).

On February 27, 2014, plaintiff received the formal written rejection notice for the books he ordered from Noble Knight.  (Doc. 1, p. 9 ¶ 11).  Warden English's rejection notice, dated February 20, 2014, stated that the books plaintiff ordered were rejected because "[i]t was determined this magazine is detrimental to the security, good order, or discipline of the institution due to fantasy role playing, competitive violence, addictive escape behavior, and possible gambling."  (Doc. 1, p. 9 ¶ 11; *see also* Doc. 38, Ex. 1a (copy of rejection notice)).

On March 3, 2014, Noble Knight received the rejected books from FCI-Marianna.  Plaintiff complains that the books were returned to Noble Knight prior to expiration of the 20-day period for him to appeal the rejection, as required by Policy Statement 5266.07.  (Doc. 1, p. 9 ¶ 12; *see also* 28 C.F.R. § 540.71(d) and (e)).

On March 13, 2014, prior to receiving the response to his BP-8, plaintiff signed a BP-9 Request for Administrative Remedy to the Warden (receipted by the Warden on March 21, 2014), indicating that his grievance concerned "Rejection of all role playing books by mail room."  (Doc. 1, p. 9 ¶ 13 and Attach. at p. 26; Doc. 38, Ex. 3b).   Plaintiff argued that defendant Thompson's December 10, 2013 memorandum contravened 28 C.F.R. § 540.70; that the memo did not justify the rejection of his books because he did not order them through an SPO; and that the December 10, 2013 memorandum was retaliatory because it "was created as an answer to inmates seeking to SPO dice.  Applying it to books, which were allowed, is retaliatory in nature."  (Doc. 1, Attach. at p. 26; Doc. 38, Ex. 3b).  Warden English denied the appeal (Remedy #772436), explaining:

> This is in response to your Request for Administrative Remedy receipted March 21, 2014.  Specifically, you are requesting to receive role playing material.
>
> Program Statement 5266.11, <u>Incoming Publications</u>, provides the following in reference to the rejection of incoming publications by

stating in part, "The Warden may reject a publication only if it is determined detrimental to the security, good order, or discipline of the institution or if it might facilitate criminal activity."

Accordingly, materials associated with role playing games and the supplemental publications have been deemed as detrimental to the security of the institution and are not permissible.

Based on the above information, the relief you seek is denied.

(Doc. 1, Attach. at p. 34; Doc. 38, Ex. 3b).[2]   Plaintiff filed a BP-10 Regional Administrative Remedy Appeal.   (Doc. 38, Ex. 3b).   Plaintiff argued that other inmates were being retaliated against because when they sought to order role-playing game materials via SPO, the Recreation Department denied their requests, and when those inmates appealed the denial of their SPO requests, prison officials retaliated against them by issuing the December 10, 2013 memorandum prohibiting ordering books, cards or other gaming items via SPO.   (Doc. 38, Ex. 3b).   Plaintiff also grieved the rejection of the five books he ordered, arguing that they were rejected pursuant to the December 10, 2013 memorandum, which was improper because he had not ordered the books via SPO.   (*Id.*).   Plaintiff also claimed that the March 21, 2014 memorandum prohibiting inmates from possessing fantasy/role-playing games

---

[2] The Warden's response was issued April 2, 2014, but was reissued on May 19, 2014, because the original response had the incorrect remedy # on it.   (*See* Doc. 1, p. 10 ¶ 15 and Attach. at p. 22, 34; *see also* Doc. 38, Ex. 3b, SENTRY listings).

and related items was issued in retaliation for his having appealed the rejection

notice. (*Id*.). The Regional Director's response, dated July 24, 2014, stated:

> This is in response to your Regional Administrative Remedy Appeal
> receipted June 17, 2014. You are appealing the Warden's response to
> your Request for Administrative Remedy. You request role-
> playing/magic gaming materials be allowed via approved vendor.
>
> We have reviewed your appeal and the Warden's response to your
> Request for Administrative Remedy. The Warden provided a detailed
> response explaining the reason role-playing/magic gaming materials
> are not authorized. Furthermore, a memorandum to the inmate
> population explaining [sic] staff determined such material to be
> detrimental to the security, good order, and discipline of the institution.
>
> Accordingly, this response to your Regional Administrative Remedy
> Appeal is for Informational Purpose Only. If dissatisfied with this
> response, you may appeal to the Office of General Counsel. . . .

(Doc. 38, Ex. 3b). Plaintiff appealed the response by filing a BP-11 Central Office

Administrative Remedy Appeal. (*Id*.). Plaintiff's Central Office appeal argued that

both Warden English's rejection notice concerning the books he ordered, and the

March 21, 2014 memorandum banning inmates' possession of fantasy role-playing

games and related materials, determined in conclusory terms that the items were

"detrimental" but failed to provide inmates with sufficient details of why they were

detrimental to enable inmates to challenge that determination. (Doc. 38, Ex. 3b).

Plaintiff also claimed that the March 21, 2014 ban on inmates' possession of role-

playing games and related publications violated BOP policy 5266.07, because it

effectively imposed a blanket ban on all role-playing books regardless of content, without reviewing each individual publication independently.  Plaintiff's appeal was denied on November 3, 2011, as follows:

> You appeal the rejection of your role-playing books.  You contend you were not given an opportunity to challenge the decision and the Warden has placed a blanket ban on all role-playing books.  You request to receive the books and that the blanket ban on role-playing books be rescinded.
>
> Program Statement 5266.11, Incoming Publications, provides "The Warden may reject a publication only if it is determined detrimental to the security, good order, or discipline of the institution or if it might facilitate criminal activity . . . Publications which may be rejected by a Warden include but are not limited to publications which meet one of the following criteria: . . . It depicts, encourages, or describes methods of escape from correctional facilities . . . It depicts, describes or encourages activities which may lead to the use of physical violence or group disruption."  The Warden reviewed your publications and determined they should be rejected because they contained competitive violence and addictive escape behavior.  We find the Warden's determination is an appropriate exercise of discretion.
>
> There is no evidence you were denied the ability to challenge the rejection of your publications as is evidenced by the instant appeal.  Additionally, there is no evidence of a "blanket ban" by the Warden on all role-playing books.  Your publications were reviewed individually prior to their rejection.  Staff actions in this matter are consistent with the requirement of Program Statement 5266.11, Incoming Publications.  Your appeal is denied.

(Doc. 38, Ex. 3b).

While plaintiff was appealing the rejection of the particular books he ordered, defendant Captain M. Perez Cartagena issued the following memorandum on March

21, 2014, which was approved by defendants Assistant Warden Lowe and Warden

English:

> Bureau of Prisons policy states all games must be provided by the
> Recreation Department.  Furthermore, staff has determined role-
> playing games, cards, and publications to be detrimental to the security,
> good order, and discipline of the institution.

> Bureau of Prisons Program Statement 5266.11, Incoming Publications,
> provides the following in reference to the rejection of incoming
> publications by stating in part, "The Warden may reject a publication
> only it if is determined detrimental to the security, good order, or
> discipline of the institution or if it might facilitate criminal activity.["]

> Accordingly, role-playing game materials and the supplemental
> publications have been deemed as detrimental to the security of the
> institution and are not permissible.

> Inmates found in possession of such items, and can prove ownership,
> will be afforded the opportunity to mail them out prior to June 1, 2014.
> After this date, all items will be considered contraband and will be
> confiscated.

(Doc. 1, Attach. at p. 17).

Plaintiff challenged the March 21, 2014 "ban" by filing a BP-8 to institutional

staff.  (Doc. 1, Attach., pp. 41-43).  Staff responded:  "As stated in the memorandum,

fantasy role-playing games, cards and publications have been determined to be

detrimental to the security of the institution and are not permissible.  These items are

considered contraband and will be confiscated."  (Doc. 1, Attach. at p. 40).  Plaintiff

appealed by filing a BP-9 Request for Administrative Remedy.  (Doc. 1, Attach. at

pp. 38-39).   Defendant Warden English denied relief (Remedy # 804953),

explaining:

> This is in response to your Request for Administrative Remedy
> receipted December 18, 2014.  Specifically, you are requesting the
> removal of a memo dated March 21, 2014, which prohibits inmates
> from having fantasy/role-playing card games and supplemental
> publications.
>
> A review into this matter reveals the usage of fantasy and role playing
> games has been denied throughout the Bureau of Prisons.  This activity
> has been deemed as detrimental to the security of the institution.  Also,
> Program Statement 5266.11, Incoming Publications, states all
> publications must be ordered through a publisher, book club, or
> bookstore.  The Warden may reject a publication only if it is determined
> detrimental to the security, good order, or discipline of the institution
> or if it might facilitate criminal activity.
>
> Based on this information, your Request for Administrative Remedy is
> denied.

(Doc. 1, Attach. at p. 37).  Plaintiff's appeal to the Regional Director was denied as

follows:

> This is in response to your Regional Administrative Remedy Appeal
> receipted January 12, 2015.  You are appealing the Warden's response
> to your BP-9.  You request to keep role-playing materials.  You further
> state your Constitutional Rights are being violated.
>
> A review of your appeal and the Warden's response to your BP-229
> revealed; the Warden provided a detailed response explaining the
> reason role-playing materials are not authorized.   Furthermore, a
> memorandum to the inmate population explains why such material was
> viewed to be detrimental to the security, good order, and discipline of
> the institution.   There is no evidence supporting your Constitutional
> Rights are being violated.

Accordingly, your Regional Administrative Remedy Appeal is denied.

(Doc. 1, Attach. at p. 33).   Plaintiff's appeal to the Central Office was denied on

April 30, 2015, stating:

> You appeal the Warden's decision to ban role-playing games, cards and publications.  You request that the ban be overturned, compensation for loss of property, costs associated with filing the instant administrative remedy, and a change in policy.
>
> Our review of this matter reveals that both the Warden and regional director have adequately addressed your concerns.  Program Statement 5266.11, Incoming Publications, provides "The Warden may reject a publication only if it is determined detrimental to the security, good order, or discipline of the institution or if it might facilitate criminal activity . . . Publications which may be rejected by a Warden include but are not limited to publications which meet one of the following criteria: . . . It depicts, encourages, or describes methods of escape from correctional facilities . . . It depicts, describes or encourages activities which may lead to the use of physical violence or group disruption."
>
> The Warden has determined role-playing games, cards, and publications are detrimental to the security of the institution because they encourage activities which may lead to the use of physical violence or group disruption.   We find the Warden's determination is a reasonable exercise of sound correctional judgment which is believed to be in the best interests of the correctional environment.
>
> Monetary damages may not be awarded via the administrative remedy process.  If you wish to seek monetary compensation based on the negligence of staff, you must file your claim through the administrative procedure applicable to the basis of your claim (i.e., 31 U.S.C. § 3723 or the Federal Tort Claims Act).
>
> Your appeal is denied.

(Doc. 1, Attach. at p. 30).

Plaintiff submitted two other sets of administrative grievances (Remedy #809217 and Remedy #809218).  (Doc. 1, Attach. at pp. 44-50 and pp. 51-57, respectively).  In the first set of grievances (Remedy #809217), plaintiff requested a definition of the term "addictive escape behavior" as that term was used by defendant English in rejecting the books plaintiff ordered from Noble Knight.  (Doc. 1, Attach. at pp. 49-50; Doc. 38, Ex. 3d).  Upon receiving English's definition, plaintiff appealed, arguing that she improperly rejected the books on that basis.  (Doc. 1, Attach. at pp. 44-50; Doc. 38, Ex. 3d).  In the second set of grievances (Remedy #809218), plaintiff asked whether the ban on inmates' possession of role-playing games was a local policy, a regional policy or a national policy.  (Doc 1, Attach. at pp. 56-57; Doc. 38, Ex. 3e).  After defendant English responded that guidance had been provided by a publication from the BOP Central Office, plaintiff appealed, arguing that the ban misinterpreted that publication.  (Doc. 1, Attach. at pp. 53-55, Doc. 38, Ex. 3e).  In both of plaintiff's BP-10 appeals to the Regional Director, the Regional Director interpreted plaintiff's requests as seeking additional information on role-playing gaming materials.  (Doc. 1, Attach. at pp. 45, 52).  The Regional Director denied both appeals, explaining, in relevant part:

> A review of this matter revealed this issue has been appropriately addressed in previous Administrative Remedies.  You have provided

no new information that warrants further investigation.  You have the
responsibility to use the Administrative Remedy program in good faith
and in an honest straightforward manner.  Filing multiple remedies with
the same allegation is an improper use of the Administrative Remedy
Program.  If you are not satisfied with the previous responses you
received, you should have filed an appeal to the next level.

(Doc. 1, Attach. at pp. 45, 52).  The Central Office did not respond to either of

plaintiff's BP-11 appeals.  (Doc. 1, Attach. at pp. 44, 51; Doc. 38 Ex. 3, Jusino Decl.

¶¶ 14, 17).

Plaintiff alleges that on August 17, 2015, he noticed that the December 10,

2013, and March 21, 2014 memoranda had been removed from the electronic

bulletin board.  Plaintiff alleges that although [t]here is no record in policy, local

supplements, or memorandums [sic] that a ban [on role-playing materials] is still in

place", defendant Captain Pryor has confirmed that all role-playing game materials

are still considered contraband and are not allowed on the compound.  (Doc. 1, p. 11

¶ 20).

## PLAINTIFF'S CLAIMS

Claim One:  First Amendment Violation – Retaliation

Plaintiff identifies his claim as:  "1st Amendment – Retaliation for petitioning

for redress of grievances."  (Doc. 1, p. 13).  Plaintiff identifies the facts supporting

this claim as those contained in paragraphs 2, 3, 5, 13, 14, and 16 of his complaint.

(*Id*.).  Defendants seeks dismissal of this claim for failure to exhaust administrative remedies and failure to state a claim.  (Doc. 37, pp. 29-33).

A First Amendment retaliation claim requires an inmate to establish three elements:  "(1) he engaged in constitutionally protected conduct; (2) the defendant's retaliatory act adversely affected the protected conduct; and (3) there is a causal connection between the retaliatory act and the adverse effect on the conduct."  *Smith v. Fla. Dep't of Corr*., 713 F.3d 1059, 1063 (11th Cir. 2013) (*citing Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005)).  Paragraphs 2, 3 and 5 of plaintiff's Statement of Facts assert that "upon information and belief" Inmate Springer requested to order dice for a role-playing game via SPO; that "upon information and belief" other inmates (not plaintiff) attempted to order dice via SPO; and that on December 10, 2013, defendants issued the memorandum that inmates could not use SPOs for gaming items.  (*See* Doc. 1, pp. 7-8 ¶¶ 2, 3, 5).  These allegations do not plausibly state a claim that issuance of the December 10, 2013 memorandum was a retaliatory act against plaintiff for filing a grievance or engaging in protected speech.  As explained above, the allegation that "upon information and belief" some other inmates, not plaintiff, may have engaged in protected speech that resulted in retaliation, is insufficient to state a facially plausible retaliation claim as to plaintiff.

Plaintiff cannot rely on an allegation that others' rights were violated to establish his own constitutional injury.

Paragraphs 13, 14 and 16 allege that plaintiff appealed the rejection of the books he ordered on January 6, 2014, by filing a BP-9 to defendant English (Remedy #772436, receipted March 21, 2014); that on March 21, 2014, defendants issued the memorandum prohibiting inmates from possessing fantasy/role-playing games and publications, and declaring the items contraband; and that plaintiff appealed the denial of his BP-9 by filing a BP-10 appeal to the regional director.  These allegations, viewed in the context of the complaint as a whole, do not state a facially plausible claim of retaliation, because plaintiff fails to show that the March 21, 2014 ban (or the February 20, 2014 book rejection) was an adverse action that likely would deter a person of ordinary firmness from filing grievances.  *See Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008).  Plaintiff admits that he continued to complain and file grievances concerning the rejection of the role-playing books he ordered as well as the December 10, 2013, and March 21, 2014 memoranda, even after the books were rejected and the memoranda issued, which illustrates that a person of ordinary firmness would likely not be deterred from engaging in such speech.  *See, e.g., Smith v. Israel*, 619 F. App'x 839, 842 (11th Cir. 2015) ("Smith failed to state a claim that Sergeant Owens retaliated against him for asking to speak to the

supervisor by ordering him to be strip searched and then handcuffed for 20 to 30 minutes.  Smith did not show that these allegedly retaliatory acts would 'likely deter a person of ordinary firmness' from complaining about the conditions of his confinement, as Smith himself made a second verbal request after the strip search and filed a grievance after the handcuffing." (*citing Smith*, 532 F.3d at 1276)); *Mitchell v. Thompson*, 564 F. App'x 452, 457 (11th Cir. 2014) ("Mitchell also alleges Cross retaliated against him, when she denied his grievances.  This allegation fails to state a claim for relief, because it does not show Mitchell suffered an adverse action that likely would deter a person of ordinary firmness from engaging in such speech.  Mitchell continued to file grievances against Cross, even after she had denied his first grievance, which illustrates that a person of ordinary firmness would likely not be deterred from engaging in such speech.") (*citing Smith*, 532 F.3d at 1276).

In addition, plaintiff's complaint fails to allege specific facts plausibly showing that the March 21, 2014 institution-wide ban on inmates' possession of role-playing games was caused by any defendant's subjective motivation to punish plaintiff for filing grievances.  That the memorandum issued the same day plaintiff's BP-9 appeal was receipted concerning the rejection of his book order does not, by itself, raise a reasonable inference that the ban was motivated by a desire to discipline

him for filing grievances, especially in light of plaintiff's allegation that Warden English mentioned the proposed ban on February 7, 2014, prior to plaintiff filing any grievances.  *See Smith*, 532 F.3d at 1278 ("The causal connection inquiry asks whether the defendants were subjectively motivated to discipline because [the prisoner] complained of some of the conditions of his confinement."); *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1243 (11th Cir. 2005) (explaining that "proving a temporal relationship between [two events] does not establish a causal relationship."); *see also, e.g. Bennett v. Chitwood*, 519 F. App'x 569, 575 (11th Cir. 2013) ("That Bennett was attacked several days after Captain Lynch's comments were published does not, by itself, demonstrate a sufficient causal link between the two events.").   Absent non-conclusory allegations supporting two of the three elements of a retaliation claim, plaintiff's complaint fails to state a claim on which relief may be granted.

<u>Claim Two:  First Amendment Violation – Denial of Access to Rejected Books during Appeal Period</u>

Plaintiff claims his First Amendment rights were violated when he was "[d]enied access to rejected books so that plaintiff could properly mount defense against rejection".  (Doc. 1, p. 13).  This claim apparently involves the return of the rejected books to the vendor (Noble Knight) prior to expiration of plaintiff's 20-day appeal period.  Defendants seeks dismissal of this claim for failure to exhaust

administrative remedies and for failure to state a claim.  (Doc. 37, pp. 33-38).  With regard to the exhaustion defense, plaintiff responds that he exhausted this claim by requesting, in his BP-8 (Informal Attempt at Resolution) dated February 21, 2014, that whenever an incoming publication is rejected by mailroom staff per BOP Policy 5266.07 Incoming Publications, staff hold the publication for 20 days to allow the inmate to file an appeal via the Administrative Remedy Process.  (Doc. 50, p. 12 (referencing Doc. 1, Attach. at p. 27)).

Even accepting as true plaintiff's assertion that he took the first step in the grievance process by informally raising the issue of the premature return of his book order to Noble Knight, the undisputed evidence of plaintiff's administrative grievances establishes that plaintiff abandoned the issue in his formal appeals. Plaintiff's BP-9, BP-10 and BP-11 made no mention of the rejected books having been returned prematurely or of that having affected plaintiff's ability to appeal their rejection.  (Doc. 1, Attach. at pp. 19-26; Doc. 38, Ex. 3b).  Instead, plaintiff complained that his appeal was hampered by Warden English's failure to provide a detailed explanation as to why she considered the books "detrimental" and why she

considered role-playing games and related materials "detrimental".  (Doc. 38, Ex. 3b).[3]

Proper exhaustion means that an inmate must "us[e] all steps" in the administrative process, and comply with any administrative "deadlines and other critical procedural rules," before filing a complaint about prison conditions in federal court.  *Woodford*, 548 U.S. at 89-91 (citation omitted).  If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claim.  *Johnson v. Meadows*, 418 F.3d 1152, 1159 (11th Cir. 2005) ("[W]e hold that the PLRA's exhaustion requirement does contain a procedural default component."); *see also Whatley v. Warden, Ware State Prison*, 802 F.3d 1205, 1216-17 (11th Cir. 2015) (concurrence noting importation of habeas corpus procedural default doctrine into this area of law).

Plaintiff failed to exhaust all available steps of the administrative remedy procedure concerning the premature return of his rejected books, and is now time-barred from pursuing this claim.  *See* 28 C.F.R. § 542.14 (providing that the deadline for submitting a formal administrative remedy request is 20 days following the date

---

[3]  Plaintiff's formal appeals also requested that implementation of the March 21, 2014 memorandum be stayed pending resolution of any grievances challenging the ban, but that does not relate to the premature return of plaintiff's rejected book order during the 20-day appeal period.

on which the basis for the request occurred, unless the deadline is extended upon a showing of a valid reason for the delay; providing examples of what are considered valid reasons); *see also Meadows*, 418 F.3d at 1159 (holding that prisoners must comply with the applicable deadlines, or standards for failure to comply, contained in the administrative grievance procedures).  Plaintiff provides no arguably valid reason for failing to abandon this issue in his formal appeals from the rejection notice.  Plaintiff's premature-book-return claim is procedurally defaulted and should be dismissed with prejudice for plaintiff's failure to exhaust administrative remedies. *See, e.g., Simpson v. Holder*, No. 5:04CV543-OC10GRJ, 2005 WL 7897010, at *4 (M.D. Fla. Oct. 26, 2005) (dismissing with prejudice federal prisoner's unexhausted and procedurally defaulted *Bivens* claims), *aff'd*, 200 F. App'x 836 (11th Cir. 2006).

Claim Three:  First Amendment Violation – "Blanket ban" on All Role-playing Books and Materials

Plaintiff's third claim states he is challenging the "[b]lanket ban on all role-playing books and material whether reviewed or not and whether books are yet published or not."  (Doc. 1, p. 13).  Plaintiff does not clarify whether he is challenging (1) the December 10, 2013 memorandum advising inmates that they were not permitted to submit Special Purchase Orders to the Recreation Department for games and gaming-related items such as books and cards, or (2) the March 21, 2014 memorandum prohibiting inmates from possessing fantasy role-playing games,

publications and related items.  The court liberally construes plaintiff's claim as encompassing both policies.

Defendants assert this claim should be dismissed because plaintiff does not allege he sustained any injury arising from either policy, and because the allegations of his complaint and relevant grievances establish that the rejection of his five books on February 20, 2014, and the denial of his appeal from the rejection, were not based on a policy, but rather on Warden English's review of each individual book and her determination that each book was detrimental to institutional security.  Defendants also assert they are entitled to qualified immunity because plaintiff's complaint fails to demonstrate that any defendant violated plaintiff's clearly established constitutional rights.  (Doc. 37, pp. 28, 39-52).

A.      Standing

"[S]tanding cannot be waived and may be asserted at any stage of litigation." *Harris v. Evans*, 20 F.3d 1118, 1121 n.4 (*citing Church of Scientology Flag Serv. Org., Inc. v. City of Clearwater*, 777 F.2d 598, 606 (11th Cir.1985)).  "For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975).  "The essence of a standing

question is whether the plaintiff has alleged 'such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for the illumination of difficult constitutional questions.'" *Saladin v. City of Milledgeville*, 812 F.2d 687, 690 (11th Cir. 1987) (*quoting Baker v. Carr*, 369 U.S. 186, 204, 82 S. Ct. 691, 703, 7 L. Ed. 2d 663 (1962)).  Both "constitutional" and "prudential" requirements comprise the analytical framework for resolving standing issues.  *Harris*, 20 F.3d at 1121 (*citing Warth*, 422 U.S. at 498-99; *Saladin*, 812 F.2d at 690).

"[T]he irreducible constitutional minimum of standing contains three elements."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992).

> First, the plaintiff must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.  Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Id.* at 560-61 (alterations, footnote, citations, and internal quotation marks omitted).

"The party invoking federal jurisdiction bears the burden of establishing these elements."  *Id.* at 561.  Establishing an injury-in-fact does not require a plaintiff to

wait for an injury to occur.  "An injury is imminent if it is likely to occur, and likely to do so immediately." *31 Foster Children v. Bush*, 329 F.3d 1255, 1265 (11th Cir. 2003) (quotations and citations omitted).  "Immediacy requires that the anticipated injury occur within some fixed period of time in the future." *Smith v. Sec'y, Dep't of Corr.*, 602 F. App'x 466, 469 (11th Cir. 2015) (*citing Fla. State Conference of N.A.A.C.P. v. Browning,* 522 F.3d 1153, 1161 (11th Cir. 2008)).

### 1.   December 10, 2013 Memorandum Restricting Use of SPOs

Plaintiff's challenge to the December 10, 2013 memorandum as retaliatory was dismissed for failure to state a claim.  *See* discussion *supra*, Claim One. Plaintiff's complaint, construed liberally, also appears to challenge the December 10, 2013 policy as violative of the First Amendment on the basis that it is part of the "blanket ban on all role-playing books and material. . . ."  (*See* Doc. 1, p. 13 (First Amendment "blanket ban" claim with citation to factual allegation ¶ 5, which describes the December 10, 2013 memorandum)).  Plaintiff's allegations, however, fail to establish that plaintiff has standing to challenge the SPO memorandum.

Indeed, plaintiff's complaint does not allege he suffered any injury-in-fact arising from the SPO memorandum.  Plaintiff does not allege he attempted to order any game, book or role-playing publication through a Special Purchase Order.  To the contrary, plaintiff admits that <u>unlike</u> the inmates who attempted to order role-

playing gaming items via the SPO process, he ordered the five books at issue by placing an email order directly with Noble Knight and paying for the purchase with funds from his inmate account.  (Doc. 1, p. 8 ¶ 6).  Plaintiff's complaint and attachments also establish that Warden English's rejection of the five books he ordered, and her denial of his appeal, was not based on the December 10, 2013 policy on SPOs, but rather on her review of the books and her determination that they were "detrimental to the security, good order, and discipline of the institution due to fantasy role playing, competitive violence, addictive escape behavior, and possible gambling."  (Doc. 1, p. 9 ¶¶ 11, 15 and Attach. at p. 34; *see also* Doc. 38, Ex. 3b). In addition to failing to show an injury-in-fact, plaintiff also fails to demonstrate that the injury he did sustain (the rejection of the five books he ordered) is fairly traceable to the December 10, 2013 memorandum and is likely to be redressed by a ruling that the December 10, 2013 memorandum is unconstitutional.

To the extent plaintiff alleges that other inmates' requests to order books or role-playing gaming items through the SPO process were denied pursuant to the December 10, 2013 policy, he lacks standing to litigate the First Amendment rights of those inmates, as he does not meet the requirements for third-party standing.  *See, e.g., Harris*, 20 F.3d at 1121-24 (outlining the requirements for third-party standing and holding that inmate lacked standing to bring First Amendment challenge to

prison policy prohibiting guards from communicating directly with parole board; inmate's complaint alleged only that he had *requested* that prison employees write recommendation letters on his behalf but the DOC policy prevented them from doing so; inmate never made any showing that there were specific prison employees who, but for the prison policy, would have written favorable letters on his behalf. Moreover, inmate could not show that the inability of prison employees to write letters harmed him in any specific, objective manner).  There is no impediment to the ability of other inmates to assert their own First Amendment rights concerning the December 10, 2013 policy on SPOs.  Plaintiff's First Amendment challenge to the December 10, 2013 policy should be dismissed for lack of standing.

        2.    <u>March 21, 2014 Memorandum Prohibiting Inmates from Possessing Fantasy Role-Playing Games and Related Items, and Declaring Such Items Contraband</u>

Plaintiff also challenges the "blanket ban" imposed by the March 21, 2014 memorandum.  Plaintiff claims that the March 21, 2014 memorandum prohibiting inmates from possessing role-playing games and related materials (including publications) and declaring such items contraband violates his First Amendment right to free speech because it impermissibly infringes on his right to possess and read publications and fails to provide individualized review of each publication.

The foregoing standing analysis applies equally to plaintiff's challenge to the March 21, 2014 memorandum. Plaintiff's complaint does not allege an injury in fact attributable to the March 21, 2014 policy. For example, plaintiff does not allege that any books he possessed were subject to the March 21, 2014 memorandum, were declared contraband (or were in danger of being declared contraband), or were confiscated.[4] The only injury-in-fact plaintiff alleges is the rejection and return of the five books he ordered on January 6, 2014. Plaintiff's complaint and attachments establish that the books were rejected in February of 2014, prior to issuance of the March 21, 2014 memorandum. Also, as discussed above, plaintiff's complaint and attachments establish that Warden English's rejection of the five books plaintiff ordered, and her denial of his appeal, were based on her review of the books and her determination that they were "detrimental to the security, good order, and discipline of the institution due to fantasy role playing, competitive violence, addictive escape behavior, and possible gambling." (Doc. 1, p. 9 ¶¶ 11, 15 and Attach. at p. 34; *see*

---

[4] Plaintiff's prayer for relief requests compensatory damages "to replace the books plaintiff was forced to mail-out without review", (doc. 1, p. 13), and plaintiff's Statement of Claims identifies plaintiff's final claim, discussed *infra*, as "Deprivation of property without procedural protection. Inmates not allowed to have books reviewed prior to them being declared contraband." (doc. 1, p. 14). Plaintiff's complaint, however, provides no factual allegations remotely suggesting that plaintiff actually possessed role-playing game materials that were subject to the March 21, 2014 memorandum, or that plaintiff was dispossessed of any role-playing game materials as a result of the memorandum. Although plaintiff alleges, in an affidavit filed in response to defendants' request for summary judgment, that on May 27, 2014, he mailed out approximately 32 role-playing game books to avoid them being confiscated pursuant to the March 21, 2014 memorandum (doc. 50, Ex. 1a, Klug Aff. ¶ 11), plaintiff made no such allegation in his complaint.

*also* Doc. 38, Ex. 3b).  Plaintiff's complaint fails to demonstrate that plaintiff has a sufficient "personal stake in the outcome" of his challenge to the March 21, 2014 memorandum, so as to "assure that concrete adverseness" necessary for standing.

B.    Qualified Immunity

Even were the court to conclude that plaintiff has standing to challenge the March 21, 2014 ban on inmates' possession of role-playing games, books and related items, his claim is subject to dismissal because defendants are entitled to qualified immunity.  The pleadings establish that Captain Perez Cartagena, Associate Warden Lowe and Warden English's decision to prohibit inmates from possessing role-playing games and related items (including publications) was within the scope of their discretionary authority.  *See Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998) (holding that to determine whether a challenged action was within the scope of a defendant's discretionary authority, "a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." (internal quotation marks omitted)); *see also* Doc. 1, Attach., p. 30 (Central Office's confirmation that Warden English had the discretionary authority to institute the March 21, 2014 ban on role-playing games and related materials).

The qualified immunity analysis begins and ends with the second prong of the *Saucier* standard – whether it was clearly established in March of 2014, that prohibiting inmates from possessing fantasy/role-playing games and related materials (including publications) on the basis of institutional security violated plaintiff's constitutional rights.[5]  In a string of cases decided the last two years, the United States Supreme Court has addressed the "clearly established law" prong of the qualified immunity analysis.  The Court's most recent case addressing the issue, *Mullenix v. Luna*, — U.S. —, 136 S. Ct. 305, 193 L. Ed. 2d 255 (2015), emphasizes the principles governing this court's analysis:

> A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right."  *Reichle v. Howards*, 566 U.S. —, — (2012) (slip op., at 5) (internal quotation marks and alteration omitted).  "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011).  Put simply, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986).

> "We have repeatedly told courts . . . not to define clearly established law at a high level of generality."  *al-Kidd, supra*, at 742.  The dispositive question is "whether the violative nature of particular

---

[5] Although defendants rely on matters outside the pleadings to argue that plaintiff fails to establish a violation of his constitutional rights, resolution of the second prong of the qualified immunity standard – whether the facts presented in plaintiff's complaint and attachments show that plaintiff's asserted First Amendment right was clearly established in March of 2014 – is a legal question that does not require consideration of factual materials outside the pleadings.  Thus, the issue can be resolved on defendants' motion to dismiss.

conduct is clearly established." *Ibid*. (emphasis added). This inquiry
"'must be undertaken in light of the specific context of the case, not as
a broad general proposition.'" *Brosseau v. Haugen*, 543 U.S. 194, 198,
125 S. Ct. 596, 160 L. Ed. 2d 583 (2004) (per curiam ) (*quoting Saucier
v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)).

136 S. Ct. at 308.  The Eleventh Circuit has observed that "[a] government-officer

defendant is entitled to qualified immunity unless, at the time of the incident, the

preexisting law dictates, that is, truly compels, the conclusion for all reasonable

similarly situated public officials that what [a] Defendant was doing violated [a]

Plaintiff's federal rights in the circumstances." *Marsh v. Butler Cnty., Ala*., 268 F.3d

1014, 1030-31 (11th Cir. 2001) (en banc) (alteration adopted) (quotation marks

omitted), *abrogated on other grounds by Twombly*, 550 U.S. 544, 127 S. Ct. 1955,

167 L. Ed. 2d 929 (2007).

As to the "clearly established" prong, defendants argue that courts have

applied the relevant legal standard, *i.e*., the test articulated in *Turner v. Safely*, 482

U.S. 78 (1987), to prison bans on fantasy role-playing games and related materials

and have uniformly found such bans constitutional.  (Doc. 37, pp. 42-43 (*citing

Singer v. Raemisch*, 593 F.3d 529 (7th Cir. 2010) (affirming summary judgment in

favor of prison officials on inmate's claim that confiscation of his Dungeons &

Dragons-related books, magazines and manuscript pursuant to prison's policy

banning inmates' possession of fantasy/role-playing games and related materials

violated the First Amendment); *Bahrampour v. Lampert*, 356 F.3d 969, 974-76 (9th Cir. 2004) (holding that prohibition on inmates' possession of role-playing materials is reasonably related to legitimate penological interests and does not violate the First Amendment); *Jayquay v. Maynard*, 47 F.3d 1178 (10th Cir. 1995) (unpublished) (same); *Glassman v. Yates*, No. 1:08-cv-01485, 2011 WL 347132 (E.D. Cal. 2011) (same); *Farmer v. Dormire*, No. 03-4180-CV, 2005 WL 2372146 (W.D. Mo. 2005) (defendants were entitled to qualified immunity on inmates' claim that regulation banning role-playing games violated the First Amendment; the regulation did not violate the First Amendment and, even if it did, there was no legal precedent that denying inmates role-playing games violates their First Amendment rights))).

In response, plaintiff identifies six cases—none from the United States Supreme Court, the Eleventh Circuit, or the Florida Supreme Court—he says established the unlawfulness of the March 21, 2014 ban:  *Bruce v. Gomez*, No. 2:96-cv-02227-JFM (E.D. Ca. Sept. 25, 2000); *Apratt v. R.I. Dep't of Corr.*, 482 F.3d 33 (1st Cir. 2007); *Taylor v. Perini*, 413 F. Supp. 189 (N.D. Ohio 1976); *Forbes v. Trigg*, 976 F.2d 308 (7th Cir. 1992); *Watters v. TSR*, 904 F.2d 378 (6th Cir. 1990); and *Williams v. Brimeyer*, 116 F.3d 351 (8th Cir. 1997).

The court has independently researched the issue.  At the time the defendants instituted the March 21, 2014 ban, there was (and still is) no published decision from

the Supreme Court, the Eleventh Circuit, or the Florida Supreme Court holding that

denying inmates Dungeons & Dragons or similar fantasy/role-playing game

materials and publications on the basis of institutional security violated the First

Amendment.   Plaintiff does not cite, nor has this court found, any case, or

combination of cases, from the Supreme Court, the Eleventh Circuit or the Florida

Supreme Court, clearly establishing under the *Mullenix* standard that imposition of

the March 21, 2014 ban violated the First Amendment.  Defendants are entitled to

qualified immunity on plaintiff's First Amendment claim.

<u>Claim Four:  Fourteenth Amendment Violation – Role-playing Ban Violates the
Equal Protection Clause</u>

Plaintiff claims the ban on inmates' possession of fantasy/role-playing games

and publications violates the Equal Protection Clause, because it discriminates

between general population inmates and RDAP inmates who are permitted to engage

in roleplaying scenarios as part of their treatment protocol.  (Doc. 1, pp. 13-14).

Plaintiff alleges the following to support this claim:

> Upon information and belief, inmates in the Residential Drug
> Program (RDAP) are given paper weapons by staff members and told
> to role-play drug dealers and addicts.  They are told to act like a drug
> deal gone bad is occuring [sic] or given other situations.  Inmates in
> RDAP are paid $30 per quarter and given up to 1 year off their sentence
> for participation in this program.  The blanket ban on role-playing
> games and books does not apply to the RDAP program.  The majority
> of those inmates who play role-playing games such as D&D, are white
> sex offenders.  The majority of RDAP participants are not sex-offenders

and comprise of approx. 50% black inmates and the other half mixed white and Hispanic or other racial background.

(Doc. 1, p. 11 ¶ 18). Defendants assert this claim should be dismissed for failure to state a claim. (Doc. 37, pp. 52-55).

Assuming, without deciding, that plaintiff has standing to challenge the March 21, 2014 memorandum, his complaint fails to state a facially plausible equal protection claim. "To establish an equal protection claim, a prisoner must demonstrate that (1) 'he is similarly situated with other prisoners who received' more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest, such as race." *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001) (*quoting Damiano v. Fla. Parole & Probation Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986)). "To be 'similarly situated,' the comparators must be prima facie identical in all relevant respects." *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1264 (11th Cir.2010) (quotation and emphasis omitted).

Plaintiff has not established that the March 21, 2014 memorandum treats general population inmates disparately from RDAP inmates. The March 21, 2014 memorandum addresses "the inmate population" and, on its face, disallows the possession of fantasy role-playing games such as Dungeons & Dragons for all inmates at FCI-Marianna, without exception. (Doc. 1, Attach. at p. 17). Plaintiff also fails to show that the policy is being applied in a discriminatory manner.

Plaintiff's conclusion that "[t]he blanket ban on role-playing games and books does not apply to the RDAP program" (doc. 1, p. 11 ¶ 18) is not reasonably supported by the memorandum itself, or by plaintiff's allegations.  Plaintiff does not allege RDAP inmates are allowed to play Dungeons & Dragons or similar games.  Plaintiff's description of the drug dealer/addict role-playing exercises RDAP inmates are required to perform under the supervision of Psychology Services staff as a requirement of their drug abuse treatment protocol does not reasonably support a conclusion that RDAP inmates are allowed to engage in unsupervised play of recreational fantasy/role-playing games such as Dungeons & Dragons.

To the extent plaintiff implies that RDAP inmates are treated more favorably than general population inmates because RDAP inmates are required, as part of their treatment, to engage in substance-abuse related role-playing activities under the supervision of Psychology Services staff, he fails to show that the alleged discrimination is tied to a constitutionally protected interest such as race.  RDAP is a drug abuse treatment program. 28 C.F.R. § 550.50.  Participation in RDAP is not based on any constitutionally protected characteristic such as race, but rather on an inmate's having a verifiable substance use disorder.  *See* 28 C.F.R. § 550.53(b) (identifying the admission criteria for RDAP as "(1) Inmates must have a verifiable substance use disorder.  (2) Inmates must sign an agreement acknowledging program

responsibility.  (3) When beginning the program, the inmate must be able to complete all three components described in paragraph (a) of this section.").  *See Sweet v. Sec'y, Dep't of Corr.*, 467 F.3d 1311, 1319 (11th Cir. 2009) (dismissing prisoner's equal protection claim where prisoner failed to allege "that he was treated differently on account of some form of invidious discrimination tied to a constitutionally protected interest").  Plaintiff's complaint and attachments fail to state a facially plausible claim that the March 21, 2014 ban violates the Equal Protection Clause.

Claim Five:  Fourteenth Amendment Violation – "Deprivation of property without procedural protection.  Inmates not allowed to have books reviewed prior to them being declared contraband."

Plaintiff's final claim again challenges the March 21, 2014 memorandum, this time on the basis that it deprives inmates of their property without procedural due process because the policy does not provide individual review of each publication prior to declaring it contraband.  (Doc. 1, p. 14).  Defendants assert this claim should be dismissed because (1) plaintiff failed to exhaust his administrative remedies; (2) plaintiff's complaint fails to allege facts showing that plaintiff was actually deprived of any property interest and thus fails to state a claim; (3) even if plaintiff's complaint could liberally be construed as alleging he did in fact send books out of the institution, plaintiff has not alleged he suffered a deprivation of property; and (4)

even assuming plaintiff suffered a deprivation of property, his complaint fails to state a facially plausible due process violation because plaintiff had adequate pre- and post-deprivation remedies.  (Doc. 37, pp. 55- 59).

Again, plaintiff fails to establish he has standing to bring this claim because, as discussed above, he does not allege that any property he actually possessed was required to be mailed out, was declared contraband, or was confiscated pursuant to the March 21, 2014 memorandum.  Second and alternatively, plaintiff's procedural due process challenge to the March 21, 2014 policy is not exhausted.  Plaintiff claims that the grievances he filed in administrative Remedy #772436 provided prison officials fair notice that he was raising a procedural due process issue.  (Doc. 50, p. 29).  The court disagrees.

In Remedy #772436, plaintiff grieved Warden English's rejection of the five books he ordered from Noble Knight on January 6, 2014.  (Doc. 38, Ex. 3b). Plaintiff's grievance did not allege he had been forced to mail out any role-playing books in his possession, or that any of his personal property was declared contraband under the March 21, 2014 memorandum.  In fact, plaintiff could not plausibly have grieved the March 21, 2014 memorandum in his BP-8 or BP-9 comprising Remedy #7442436, because the March 21, 2014 memorandum did not exist at the time plaintiff prepared those grievances on February 21, 2014, and March 13, 2014,

respectively.  (Doc. 1, Attach. at pp. 26-29; Doc. 38, Ex. 3b).  Although plaintiff's BP-10 appeal to the Regional Director dated April 17, 2014 challenged the March 21, 2014 memorandum as retaliatory, plaintiff made no mention that the policy deprived him of procedural due process.  (Doc. 1, Attach. at pp. 20-21; Doc. 38, Ex. 3b).  The same is true of plaintiff's BP-11 appeal to the Central Office.  (Doc. 1, Attach. at pp. 23-24; Doc. 38, Ex. 3b).

The court has also reviewed plaintiff's administrative Remedy #804952, where plaintiff challenged the policy outlined in the March 21, 2014 memorandum.  Plaintiff initiated the first step of this administrative remedy on December 8, 2014, which is well after the memorandum issued and is also well after the June 1, 2014 deadline for mailing out role-playing materials to avoid their confiscation.  (Doc. 38, Ex. 3c).  Plaintiff challenged the March 21, 2014 memorandum on First Amendment and Equal Protection grounds.  (*Id*.).  Plaintiff could have, but did not, assert a procedural due process challenge.

The record establishes that plaintiff did not exhaust available administrative remedies concerning his procedural due process claim.  Plaintiff is now foreclosed from pursuing administrative remedies on that claim because he is time-barred under the BOP's administrative remedy regulations.  Plaintiff provides no arguably valid reason for failing to include this issue in his prior grievances, or for failing to

promptly seek an extension to grieve the issue.  Plaintiff's procedural due process claim is procedurally defaulted, and should therefore be dismissed with prejudice for plaintiff's failure to exhaust administrative remedies.  *See, e.g., Simpson v. Holder*, *supra*.

PLAINTIFF'S REMAINING CLAIM AGAINST "UNKNOWN AND UNNAMED MAILROOM STAFF"

In addition to naming the individual defendants who joined in the motion to dismiss (doc. 37), plaintiff's complaint also names as a defendant "Any and all unknown and unnamed mailroom staff that processes mail and rejects role-playing books in accordance to this ban".  (Doc. 1, pp. 1, 3).  Fictitious party pleading is not permitted in federal court, unless a plaintiff describes the defendants with enough specificity to determine their identities.  *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010).  In the almost eleven months since plaintiff filed his complaint, he has not made any attempt to amend the complaint or substitute the proper parties for these "unknown and unnamed" defendants.  Even if these defendants had been identified, plaintiff's claims against them would be due to be dismissed for the same reasons plaintiff's claims against the other, named defendants are being dismissed.  The court should therefore dismiss *sua sponte* plaintiff's claims against the "unknown and unnamed" defendants.

Accordingly, it is ORDERED:

Plaintiff's motion for leave to file a surreply brief (doc. 54) is GRANTED. Plaintiff's surreply brief (doc. 55) is deemed to have been filed on May 25, 2016.

And it is respectfully RECOMMENDED:

1.   That defendants English, Lowe, Perez Cartagena, Pryor, Robinson and Thompson's motion to dismiss (doc. 37) be GRANTED, and that plaintiff's claims against these defendants be DISMISSED WITH PREJUDICE.

2.   That plaintiff's claims against "Any and all unknown and unnamed mailroom staff that processes mail and rejects role-playing books in accordance to this ban" be DISMISSED WITH PREJUDICE.

3.   That plaintiff's barebones request for summary judgment (doc. 56) be DENIED because it fails to comply with the requirements of Northern District of Florida Local Rule 56.1, and because plaintiff's complaint is subject to dismissal for the reasons outlined above.

4.   That the clerk be directed to close the file.

At Pensacola, Florida this 5th day of August, 2016.


/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.